UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BRENDA CZECH, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>WALL STREET ON DEMAND, INC., a division of GOLDMAN SACHS GROUP, INC., a Delaware corporation, and JOHN DOES,<br><br>Defendants. | No. 09 cv 180 DWF RLE<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL<br><br><u>CLASS ACTION</u> |

## CLASS ACTION COMPLAINT

Plaintiff Brenda Czech, by and through her undersigned attorneys, brings this class action complaint against Defendants to stop their practice of transmitting unauthorized text messages to the wireless devices of consumers nationwide, and to obtain redress for all persons injured by their conduct. For her class action complaint, Plaintiff alleges as follows on personal knowledge regarding herself and her own acts and experiences, and, regarding all other matters, on information and belief, including the investigation conducted by her attorneys.

### PRELIMINARY STATEMENT

1. Defendant Wall Street On Demand, Inc. ("WSOD") is a financial information service company that provides, among other things, services to its clientele

of securities brokerage houses and other financial concerns primarily over the Internet and through software applications.

2. One such software application owned and operated by WSOD is the financial information service referred to herein as Watch List Alert, which transmits electronic text messages (e.g., SMS or "Short Message Services") to the wireless devices of consumers worldwide.

3. WSOD operates in the extremely competitive market of financial information service providers, all of whom compete for clients such as The Vanguard Group, Inc. and Investor's Business Daily, Inc., among others.

4. To provide additional functionality for their users, and possibly to obtain additional revenue, WSOD allows users of Watch List Alert to input wireless telephone numbers into their Watch List Alert accounts so that communications received by the account will be forwarded as text messages ("SMS" or "text messages") to the wireless telephone numbers inputted into the account.

5. Intentionally or through Defendants' gross negligence, Watch List Alert's text-message-service feature contains a major flaw: Watch List Alert automatically sends text messages to whatever wireless phone number(s) a particular user enters into their account, regardless of whether the person receiving the text messages actually wants to receive the messages. For example, new wireless device customers often receive previously used and ported or "recycled" wireless telephone numbers, some of which then receive Watch List Alert text messages.

6. WSOD's rush to outmaneuver its competitors and to make a profit has inconvenienced and damaged wholly innocent, uninvolved third parties – including Plaintiff – who receive these unwanted, unsolicited text messages. Those persons who receive these text messages also have to pay to receive these text messages, even though they are completely unauthorized and unwelcome.

7. Children also are among those persons who are assigned recycled wireless telephone numbers previously associated with WSOD members. As such, adult-specific information and content often winds up in the hands of children.

8. To redress these injuries, Plaintiff Brenda Czech, on behalf of herself and a nationwide class of wireless device users, brings this Complaint under the Computer Fraud & Abuse Act, 18 U.S.C. § 1030, et seq., as amended by Identity Theft Enforcement & Restitution Act of 2008, P.L. No. 110-326 ("CFAA"), and the common law of the several States, and seeks damages and an injunction enjoining Defendants' future unlawful conduct as described herein.

## PARTIES

9. Plaintiff Brenda Czech is an individual residing in and a citizen of Stearns County, State of Minnesota.

10. Defendant Wall Street On Demand, Inc. ("WSOD") is a financial information services company that is wholly-owned and operated by Goldman Sachs Group, Inc. WSOD is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Colorado. WSOD conducts its business throughout the United States.

11. Defendants John Does ("Does"), whose names presently are unknown to Plaintiff, are one or more individuals or corporations transmitting the text messages at issue in this case. Plaintiff is informed and believes, and on that basis alleges, that each of these fictitiously-named Defendants is in some manner responsible for the acts, omissions, injuries, and/or damages alleged in this Complaint. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of these fictitiously-named Defendants when the same have been ascertained.

## JURISDICTION & VENUE

12. This Court has subject-matter jurisdiction because Plaintiff asserts claims under the federal Computer Fraud & Abuse Act, 18 U.S.C. § 1030, et seq., as amended by Identity Theft Enforcement & Restitution Act of 2008, P.L. No. 110-326 (hereinafter "CFAA").

13. This Court also has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367, because these claims arise out of the same common nucleus of operative fact as Plaintiff's federal claims, and would ordinarily be expected to be tried in one judicial proceeding.

14. This Court has personal jurisdiction over Defendants because all or part of the transactions giving rise to this lawsuit occurred in this District.

15. Venue is proper under 28 U.S.C. § 1391 because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred and/or a substantial part of the property that is the subject of this action is situated in this District.

## FACTUAL BACKGROUND

**WSOD's Watch List Alert**

16. In or around 2006, WSOD first released the current software version of its Watch List Alert, and has routinely updated the software since that time.

17. Watch List Alert's mobile or text-messaging feature employs technology known as Short Message Services ("SMS"), which is an information-delivery system allowing users of wireless devices, such as cellular telephones and personal digital assistants (e.g., Blackberrys), to send and receive short text messages, which usually are limited to around 160 text characters.

18. Watch List Alert's text-messaging feature works primarily by transmitting stock updates and related financial information that Goldman Sachs Group, Inc. provides to WSOD. WSOD converts that information into SMS text messages, which it then sends with the assistance of unknown third-parties (i.e., Defendants Does) to customers' cellular telephones or wireless devices. In doing so, WSOD controls the length and format of the SMS text messages by, among other things, changing both the format and content of the Goldman Sachs financial information before transmitting it as text messages to WSOD customers.

19. Watch List Alert has a significant user base: there are thousands of Watch List Alert users who take advantage of its text-messaging feature.

20. To obtain the necessary technical expertise and/or billing relationships to operate Watch List Alert's text-messaging feature, WSOD (itself or through its agents such as m-Qube, Inc., mBlox Inc., Verisign Inc., and/or others ("aggregators")), partners

with traditional cellular telephone carriers such as AT&T Mobility, Sprint, T-Mobile, and Verizon ("wireless carriers").

21.  WSOD and/or the wireless carriers profit from Watch List Alert's text-messaging feature by charging recipients of the text messages a fee to receive the text messages. Fees vary in amount; however, they are typically around $0.15 per text message.

22.  Under their contract with a wireless carrier, recipients of text messages generally must pay either a per-message fee or a flat rate for the messages. Recipients of text messages are charged text-message fees even if they did not consent to receive the Watch List Alert text messages.

23.  Defendants and/or the aggregators also levy additional fees for text-message content, which appear on consumers' cellular telephone bills as separate line-item charges. Many of these charges are similarly unauthorized.

24.  In addition to the above-described text-message fees, Watch List Alert's unauthorized text-message content, among other things: (1) causes wireless devices to slow and/or lag in operation; (2) consumes/takes up wireless bandwidth; (3) depletes the memory of consumers' wireless devices; and (4) frustrates cell-phone users. All of these are the result of the receipt of unauthorized text-message content, among other things, and impair the availability of and interrupt consumers' wireless-device service regardless of their wireless-carrier provider.

25.  By forcing wireless-device users to expend time and effort attempting to delete or otherwise remove Watch List Alert text messages and to stop future text

messaging, Watch List Alert decreases recipients' productivity. The cumulative impact of not only the multiple unwanted text messages, but also the threat that they will continue to be received along with the accompanying text-messaging charges, impedes the use of consumers' wireless devices.

26. WSOD provides no effective safeguard to ensure (or even attempt to ensure) that recipients of Watch List Alert text messages are not receiving and paying for unauthorized text messages. In fact, Watch List Alert's text-messaging feature is vulnerable to simple problems.

27. For example, when a WSOD wireless subscriber terminates his wireless service, the wireless carrier must either port the subscriber's telephone number to the subscriber's new wireless carrier or "recycle" the telephone number for use by a future wireless-device user. *See* 47 C.F.R. § 52.15(f)(ii) (2008).

28. Watch List Alert users, however, may terminate their wireless-carrier service but fail to update or delete their wireless numbers in their Watch List Alert account.

29. Because WSOD neither tracks recycled wireless numbers nor provides, offers, or supports any way to verify a wireless-carrier subscriber's continuing consent to receive text messages, Watch List Alert continues to transmit automatically text messages to the new user of a "recycled" wireless number – a person who has never consented to receive such messages.

30. Every month approximately 1.5% of wireless-service subscribers terminate their service with their wireless carrier, leaving their wireless number to be "recycled"

and given to another or new wireless subscriber. Thus, every month Watch List Alert transmits text messages to hundreds or thousands of wireless subscribers who have not agreed to receive Watch List Alert text messages.

**Allegations Specific To Plaintiff**

31. In or about 2006, Plaintiff purchased new cellular-telephone service for her personal use from an established national wireless carrier.

32. At that time, as part of her cellular-telephone-service plan, the wireless carrier assigned Plaintiff a wireless telephone number and Plaintiff agreed to pay a monthly fee for a period of approximately 12 months.

33. Shortly after activating her cellular-telephone service, Plaintiff's cellular-telephone account began receiving numerous Watch List Alert text messages. Plaintiff ultimately determined that these text messages originated from WSOD and, specifically, WSOD's Watch List Alert text-messaging feature.

34. For example, in or about February 2008, Plaintiff received on her cellular telephone a Watch List Alert text message promoting a Watch List Earnings update for one of WSOD's numerous retail brokerage house customers.

35. Plaintiff's cellular-telephone account identified the source of the text messages as the domain name alerts.wallst.com, property at all relevant times licensed to and operated by WSOD.

36. At no time did Plaintiff authorize or otherwise consent to receive WSOD's text messages on her cellular telephone.

37. Despite repeated attempts over several weeks to stop the Watch List Alert text messages, Plaintiff was unable to stop the text messages from Defendants. Eventually, with the assistance of legal counsel, a WSOD representative and/or Watch List Alert Technical Support was finally able to "take steps" to ensure that Plaintiff would no longer receive Watch List Alert text messages.

## CLASS ALLEGATIONS

38. Plaintiff Czech brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of herself and a class (the "Class") consisting of:

> All wireless-device subscribers in the United States who suffered losses or damages as a result of receiving unauthorized SMS or text messages on their wireless devices from, or on behalf of, Defendants provided, however, that the following are excluded from the proposed Class: (i) Defendants; (ii) any employee(s) of Defendants; and (iii) the District Court Judge assigned to this action.

39. The members of the Class are so numerous and geographically dispersed across the United States that joinder of all members of the Class would be impracticable. Members of the Class are located throughout the United States. The exact number of Class members is unknown to Plaintiff at this time, but Plaintiff reasonably believes the Class numbers at least in the thousands.

40. Plaintiff's claims are typical of the members of the Class. Plaintiff and all members of the Class were commonly impacted and damaged by Defendants' wrongful conduct.

41. Plaintiff will fairly and adequately protect the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class. In addition, Plaintiff's counsel is experienced and competent in prosecuting complex class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the other members of the Class.

42. Defendants have acted on grounds generally applicable to Plaintiff and the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

43. Absent a class action, members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. Class treatment of common questions of law and fact also is superior to multiple individual actions or piecemeal litigation, in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

44. The Class has a high degree of cohesion, and prosecution of the action through class representatives would be unobjectionable. Plaintiff is not aware of any other difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

45. The factual and legal bases of Defendants' liability to Plaintiff and to the Class are the same, resulting in injury to the Plaintiff and to the Class. Plaintiff and the

other members of the Class all have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

46. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class. Questions of law and fact common to the Class include, but are not limited to the following:

(a) Whether Defendants' conduct described herein is governed by the CFAA;

(b) Whether Defendants' transmission of unauthorized content to wireless devices violates the CFAA;

(c) Whether Defendants have unjustly received money belonging to Plaintiff and the Class and whether principles of equity and good conscience dictate whether Defendants should be permitted to retain it;

(d) Whether Defendants' unauthorized transmission of SMS text messages to the wireless devices of Plaintiff and the Class amount to trespass to chattels;

(e) Whether Defendants are required to institute policies and procedures to ensure that their text-message services have been authorized; and

(f) Whether Defendants are required to institute policies and procedures to ensure that their text-message services can be cancelled upon request and refunds are available for any unauthorized text-message charges.

## COUNT I
## VIOLATION OF THE COMPUTER FRAUD & ABUSE ACT
## (AGAINST ALL DEFENDANTS)

47. Plaintiff restates and realleges paragraphs 1-46 above as though set forth in full herein.

48. The Computer Fraud & Abuse Act (as amended by Identity Theft Enforcement & Restitution Act of 2008, P.L. No. 110-326) ("CFAA") authorizes federal

criminal penalties against a person who intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer. 18 U.S.C. § 1030(a)(2)(C) (2009).

49. CFAA also authorizes federal criminal penalties against a person who knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer. 18 U.S.C. § 1030(a)(5)(A) (2009).

50. CFAA also authorizes federal criminal penalties against a person who intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damages and loss. 18 U.S.C. § 1030(a)(5)(C) (2009).

51. Plaintiff's cellular telephone and the wireless devices of the other members of the Class are "protected computers" within the meaning of the CFAA because they (a) are used exclusively by or for a financial institution or the United States Government; (b) are used by or for a financial institution or the United States Government and Defendants' conduct affected that particular use; and/or (c) are used in or affecting interstate or foreign commerce or communication. 18 U.S.C. §§ 1030(e)(2)(A)-(B) (2009).

52. Defendants intentionally accessed without authorization and/or exceeded the authorized access to Plaintiff's cellular telephone and the wireless devices of the other members of the Class by sending them unauthorized Watch List Alert text messages, thereby obtaining information from those wireless devices.

53. Defendants also knowingly caused the transmission of a code or information in the form of Watch List Alert SMS text-message content to Plaintiff's cellular telephone and the wireless devices of the other members of the Class and as a result intentionally caused damage without authorization to Plaintiff's cellular telephone and the wireless devices of the other members of the Class, as "damage" is defined specifically in CFAA.

54. Defendants also intentionally accessed without authorization Plaintiff's cellular telephone and the wireless devices of the other members of the Class by sending them unauthorized Watch List Alert text messages, and as a result of such conduct, caused damages and loss to Plaintiff and the other members of the Class, as those terms are defined specifically in CFAA.

55. The CFAA provides: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g) (2009).

56. As a result of Defendants' violation of the CFAA, Plaintiff and the other members of the Class have suffered, and will continue to suffer, among other things, economic damages, the aggregate amount of which is at least $5,000, as provided for in 18 U.S.C. §1030(c)(4)(A)(i)(I) (2009).

## COUNT II
## COMMON LAW TRESPASS TO CHATTELS
## (AGAINST ALL DEFENDANTS)

57. Plaintiff restates and realleges paragraphs 1-56 above as though set forth in full herein.

58. Plaintiff's cellular telephone and the wireless devices of the other members of the Class are protected property interests.

59. Defendants and/or their agents, intentionally and/or negligently, and without authorization or consent, gained access to Plaintiff's cellular telephone and the wireless devices of the other members of the Class, used Plaintiff's cellular telephone and the wireless devices of the other members of the Class, occupied memory of these wireless devices, and/or dispossessed Plaintiff and the other members of Class of unencumbered access to their wireless devices.

60. In doing so, Defendants intentionally and/or negligently intermeddled with, damaged, and/or deprived Plaintiff and the other members of the Class of the use of their wireless devices, or a part thereof.

61. As a result of Defendants' interference with Plaintiff's and the other class members' use of their wireless devices, Plaintiff and the other members of the Class have suffered, and will continue to suffer, damages.

## COUNT III
## COMMON LAW UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

62. Plaintiff restates and realleges paragraphs 1-61 above as though set forth in full herein.

63. Plaintiff and the other members of the Class have conferred a direct benefit on Defendants. Defendants have received and retained money, through a profit share or otherwise, belonging to Plaintiff and the Class resulting from Defendants' conduct of causing them to be billed for unauthorized text-messaging charges, and, in particular, their practice of systematically, repeatedly, and without authorization, causing Plaintiff and the Class of wireless-device owners to be billed by their wireless carriers for mobile-content services and text messages authorized by the previous subscriber of recycled telephone numbers.

64. Defendants appreciate or have knowledge of this benefit and the fact that some of the monies they have received and continue to receive are the result of unauthorized text-messaging charges generally, and recycled wireless-telephone numbers in particular.

65. Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and the other members of the Class, which Defendants have been unjustly enriched as a result of Defendants' actions more fully described above.

66. As a result of Defendants' retention of money belonging to Plaintiff and the other members of the Class, Plaintiff and the other members of the Class have suffered, and will continue to suffer, damages.

67. Upon information and belief, Defendants have collected more than $5 million directly and indirectly from their unauthorized SMS text messages.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff Brenda Czech, on behalf of herself and the Class, requests the following relief:

1. An order certifying the Class as defined above;

2. An award of actual, compensatory, and/or statutory damages;

3. An injunction requiring Defendants to cease transmitting Watch List Alert text-message content to those subscribers who have not authorized or consented to receiving such text messages;

4. Reasonable attorney's fees and costs; and

5. Such further and other relief the Court deems appropriate, including imposition of a constructive trust.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  January 27, 2009          LOCKRIDGE GRINDAL NAUEN P.L.L.P.

*/s/*

Robert K. Shelquist (MN #0218910X)
Matthew R. Salzwedel (MN #0312903)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel:   (612) 339-6900
Fax:  (612) 339-0981
rkshelquist@locklaw.com
mrsalzwedel@locklaw.com

Myles McGuire
KamberEdelson, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
mmcguire@kamberedelson.com

***Attorneys for Brenda Czech, individually, and on behalf of a class of similarly situated individuals***

CC-5734 7



**LOCKRIDGE**
**GRINDAL**
**NAUEN**
P.L.L.P.
Attorneys at Law

www.locklaw.com

MINNEAPOLIS
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2179
T 612.339.6900
F 612.339.0981

WASHINGTON, D.C.
Suite 210
415 Second Street, N.E.
Washington, DC 20002-4900
T 202.544.9840
F 202.544.9850

**Matthew R. Salzwedel**
Direct: 612-596-4037
mrsalzwedel@locklaw.com
REPLY TO MINNEAPOLIS

January 27, 2009

**VIA MESSENGER**
Clerk of Court
U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415

Re:   *Brenda Czech v. Wall Street On Demand, Inc.*

Dear Clerk of Court:

Enclosed for filing in the above-referenced matter is a Summons, Complaint, and Civil Cover Sheet. I have also enclosed a check in the amount of $350.00 in payment of the filing fee.

Please sign the Summons, file-stamp the copy of the Complaint and return to the messenger for return to my office.

If you have any questions, please feel free to contact me.

Very truly yours,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

Matthew R. Salzwedel

MRS/brg
Enclosures

395219.1