UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brenda Czech, individually and on behalf
of a class of similarly situated individuals,

Civil No. 09-180 (DWF/RLE)

Plaintiff,

v.

**MEMORANDUM
OPINION AND ORDER**

Wall Street on Demand, Inc., a Delaware
Corporation, and John Does,

Defendants.

_____

Matthew R. Salzwedel, Esq., and Robert K. Shelquest, Esq., Lockridge Grindal Nauen PLLP, and Myles McGuire, Esq., KamberEdelson, LLC, counsel for Plaintiff.

Glenn M. Salvo, Esq., J.D. Jackson, Esq., and Lolita Velazquez-Aguilu, Esq., Dorsey & Whitney, LLP, counsel for Defendant Wall Street on Demand.

_____

## INTRODUCTION

Plaintiff Brenda Czech commenced this action on behalf of herself and a proposed class after receiving unwanted text messages on her cell phone that were sent by Defendant Wall Street on Demand ("WSOD"). This matter came before the Court on June 8, 2009, pursuant to WSOD's Motion for Judgment on the Pleadings. For the reasons set forth below, the Court denies the motion without prejudice and grants Czech thirty days from the date of this Order to amend her Complaint.

**BACKGROUND**

For the purposes of this motion, the Court focuses on the allegations in the Amended Complaint and the Answer. WSOD provides custom websites, reports, and tools for financial services industry customers, who in turn use WSOD's products to provide their clients or end-users with the ability to request and receive financial information. One service WSOD provides its customers is the ability to send financial information via electronic text messaging to wireless devices owned by the customers' end-users. Specifically, WSOD allows customers to subscribe to a Watch List Alert, to which customers can input their end-users' wireless telephone numbers into their Watch List accounts so that communications received by that account can be eventually forwarded by WSOD as text messages to end-users' wireless devices, including cell phones and personal digital assistants. WSOD allegedly does not track recycled or cancelled wireless telephone numbers and, as a result, text messages are sometimes sent to persons who have not subscribed to receive Watch List Alerts.

Czech alleges that she began receiving unwanted text messages from WSOD on her cell phone after she purchased a new cell phone service plan from an established national carrier. Czech asserts that she has received unwanted text messages from WSOD as recently as February 2008. As a result, Czech alleges that she incurred fees and charges related to her receipt of those messages, although she does not allege the amount of those charges or attach a bill for those charges. Czech asserts that she did not stop receiving the messages from WSOD until she contacted a lawyer, who in turn contacted WSOD.

In January 2009, Czech, on behalf of herself and a proposed class, commenced this three-count action against WSOD and other unnamed defendants, alleging (1) a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (2) a claim for trespass to chattels; and (3) a claim for unjust enrichment. After Czech filed an Amended Complaint and WSOD filed its Answer, WSOD brought its current Motion for Judgment on the Pleadings.

## DISCUSSION

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a Rule 12(c) motion, a court applies the same standard used to address a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## I. CFAA

The CFAA recognizes private causes of action for individuals damaged by computer fraud: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030 (g).[1] To bring a civil action under the CFAA, a plaintiff must show a violation of one of the CFAA's substantive provisions, as set forth in § 1030(a), and allege the existence of at least one of

---

[1] The CFAA was most recently amended in 2001 and 2008. The parties agree that for the purposes of this motion the relevant provisions of the CFAA are the same in the 2001 and 2008 versions. For that reason, unless otherwise noted, all references to the CFAA are to the 2008 version.

4

the factors set forth in subclauses (I), (II), (III), (IV), or (V) of § 1030(c)(4)(A)(i). *Id.*[2]

WSOD asserts that Czech's CFAA claim fails to state a claim for three reasons.[3] The Court will address each in turn.

### A. Loss Of At Least $5,000

The parties agree that Czech's claim under the CFAA arises under subclause (I) of § 1030(c)(4)(A)(i). That section requires a plaintiff to establish:

> loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value.

18 U.S.C. § 1030(c)(4)(A)(i)(I). Loss under the CFAA is defined as:

> the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11).

---

[2] To state a claim under the CFAA, a plaintiff need only allege the required elements pursuant to Rule 8(a)(2)'s notice pleading standard, not the heightened pleading standard of Rule 9(b). *See, e.g., P.C. of Yonkers, Inc. v. Celebrations! The Party and Seasonal Superstore, LLC*, 2007 WL 708978, at *6 (D.N.J. Mar. 5, 2007) (citing cases holding CFAA claims must satisfy general notice pleading requirements of Rule 8(a), not the heightened pleading standard of Rule 9(b)).

[3] In its reply memorandum, WSOD argued, for the first time, that Czech had not adequately pled that WSOD accessed her cell phone without authorization or that WSOD acted with criminal intent. (WSOD's Reply Mem. at 6-8.) Because Czech raised these arguments for the first time in its reply, the Court will not address them at this time. *See Myre v. State of Iowa*, 53 F.3d 199, 201 (8th Cir. 1995) (refusing consideration of argument raised for first time in reply brief).

WSOD contends that the CFAA does not allow private plaintiffs like Czech to reach the $5,000 loss threshold by aggregating losses among multiple computers owned by multiple individuals. According to WSOD, the parenthetical in § 1030(c)(4)(A)(i)(I) that discusses proceedings brought by the United States reflects Congress' intent to allow only the government, as opposed to private individuals, to aggregate losses sustained by multiple victims from a course of conduct that affects multiple computers. In its reply, WSOD explains that it believes that a civil plaintiff may aggregate losses sustained by multiple victims but only insofar as those losses arise from damage to a single computer, not to multiple computers. Because Czech has not alleged that she suffered a loss of at least $5,000 or that multiple losses resulted in damage to a single computer, or specifically to Czech's cell phone, WSOD asserts that Czech's CFAA fails to state a claim.[4]

Czech responds by extensively reviewing cases interpreting the pre-2001 and post-2001 amendments to the CFAA and the legislative history associated with those

---

[4] In its opening memorandum, WSOD also discusses Article III standing requirements and points out that Czech must establish that she personally suffered an injury. It is true that named plaintiffs must show that they were personally injured by a defendant's actions before seeking relief for themselves or as a class representative on behalf of others. *See Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n.20 (1976). Standing under federal law, however, is not equivalent to statutory standing. *See, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (explaining that statutory standing and Article III standing are separate inquiries and that the former may be considered before the latter). Here, there is no dispute that Czech has established Article III standing in that she has alleged an injury-in-fact that is casually connected to WSOD's alleged misconduct and which can be redressed by a favorable decision by this Court. Rather, the dispute at issue involves whether Czech has established the necessary elements to bring her claim under the CFAA.

amendments. Czech points out that WSOD's interpretation of § 1030(c)(4)(A)(i)(I) is at odds with a plain reading of the statute and that WSOD's argument is premised on only one unreported case from the Southern District of California, *Lyons v Coxcom, Inc.*, No. 08-cv-02047, 2009 WL 347285 (S.D. Cal, Feb. 9, 2009). Specifically, Czech asserts that a plain reading of the statute supports the interpretation that the CFAA allows plaintiffs to aggregate losses among multiple computers owned by multiple individuals in a one-year period.

The Court has carefully reviewed the cases cited by the parties and the legislative history associated with the CFAA and notes that there is a noticeable lack of legislative history associated with the 2001 amendments, which is likely explained by the fact that those amendments were enacted shortly after September 11, 2001. The Court concludes that a plain reading of the statute supports Czech's interpretation. The parenthetical relied upon by WSOD is limited to the United States and should not be read as imposing a limit upon any plaintiff other than the United States, especially in light of the definition of "loss" that includes "any reasonable cost to any victim." Taking away the parenthetical, what remains is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." After reviewing the Amended Complaint, the Court concludes that Czech has sufficiently alleged this element of the CFAA.

### B. Obtained Information

In the Amended Complaint, Czech alleges that WSOD violated §1030(a)(2)(C) of the CFAA. That section provides:

(a) Whoever--

> . . .
>
> (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—
>
> . . .
>
> (C) information from any protected computer;
>
> . . .

18 U.S.C. § 1030(a)(2)(C).

WSOD asserts that Czech's CFAA claim also fails to state a claim because she has not sufficiently alleged that WSOD has obtained information from her or other members' wireless devices. Instead, WSOD asserts that in the Amended Complaint, Czech merely offers a formulaic recitation of the statute, which is insufficient under *Twombly*, 590 U.S. at 545.

Czech responds by referencing the Random House Unabridged Dictionary definition of "information," which is defined as "data at any stage of processing (input, output, *storage*, transmission, etc.)." (Czech Opp'n Mem. at 11 (emphasis in original).) According to Czech, WSOD obtained information from Czech and other class members by, among other things, "obtaining operation and storage capacity, bandwidth, and memory from their wireless devices" and by receiving a "receipt or delivery notification" from the wireless devices after the text messages were sent. (*Id.*, citing Am. Compl. ¶¶ 17, 24.)

The Court agrees with WSOD. In the Amended Complaint, Czech alleges that WSOD:

> intentionally accessed without authorization and/or exceeded the authorized access to [Czech's] cellular telephone and the wireless devices of the other

members of the Class by sending them unauthorized Watch List Alert text
messages, thereby obtaining information from those wireless devices.

(Am. Compl. ¶ 52.) This allegation is merely a formulaic recitation of § 1030(a)(2)(C) of the CFAA. Moreover, although Czech further alleges that WSOD's messages (1) caused the wireless devices to slow in operation; (2) consumed bandwidth; (3) depleted the wireless devices' memory; and (4) frustrated users (*id*. at ¶ 24), these allegations are insufficient to allege that WSOD actually obtained information from Czech's cell phone. There are no allegations concerning how WSOD gained information from Czech, even assuming her cell phone was slowed or its memory depleted. Moreover, Czech's frustration with the receipt of unwanted text messages in no way allows WSOD to gain information from Czech. Finally, assuming WSOD's messages did indeed consume bandwidth, there are no allegations in the Amended Complaint concerning how consumption of a cell phone carrier's bandwidth results in the obtaining of information about an end-user from his or her device.

### C. Caused Damage

Similarly, in the Amended Complaint, Czech further alleges that WSOD violated §§ 1030(a)(5)(A) and (a)(5)(C) of the CFAA. Those sections provide:

(a) Whoever--
. . .

(5)(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
. . .

(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

9

18 U.S.C. §§ 1030(a)(5)(A), and (a)(5)(C).

WSOD asserts that Czech's CFAA claim also fails to state a claim because she has not sufficiently alleged that WSOD caused damage to Czech's and other proposed class members' wireless devices. Instead, WSOD asserts that, in the Amended Complaint, Czech merely offers a formulaic recitation of the statute, which is insufficient under *Twombly*, 590 U.S. at 545. Czech responds that her allegations are more than enough to state a claim because the damages she alleges in paragraph 24 of the Amended Complaint—particularly, the slowing of the wireless devices and the depleting of memory—impair the ability of and interrupt end-users' wireless-device service.

The Court agrees with WSOD. The CFAA defines damage as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Assuming Czech's allegations in paragraph 24 of the Amended Complaint are true, those allegations do not explain how Czech or the proposed class members suffered any damage. Instead, the allegations in the Amended Complaint are merely conclusory statements listing generalized grievances that are insufficient under *Twombly*.

In sum, the Court concludes that Czech has failed to state a claim under the CFAA because she has failed, at a minimum, to sufficiently allege that WSOD obtained information from her cell phone or that WSOD's unwanted text messages resulted in damage, as defined by the CFAA.

## II. Leave to Amend Complaint and State Law Claims

In the event that the Court dismisses the CFAA claim with prejudice, Czech asks the Court not to exercise supplemental jurisdiction over her two state law claims. Czech then also asks for leave to file a Second Amended Complaint. Because leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), the Court will grant Czech's request to file a Second Amended Complaint and deny without prejudice WSOD's Motion for Judgment on the Pleadings. The Court, however, has serious doubts concerning the future viability of Czech's CFAA claim. Given this, the Court finds it prudent to delay addressing the state law claims until the Court has reached a final decision on the CFAA claim.

Accordingly, **IT IS HEREBY ORDERED** that:

1. WSOD's Motion for Judgment on the Pleadings (Doc. No. 12) is **DENIED WITHOUT PREJUDICE.**

2. The Court grants Czech thirty days from the date of this Order to file a Second Amended Complaint. If she fails to do so, the Amended Complaint will be dismissed without prejudice.

Dated: July 10, 2009
s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge